DECISION AND JUDGMENT ENTRY
Defendant-Appellant Terry A. Riley was found guilty of involuntary manslaughter, in violation of R.C. 2903.04(B), by a jury in the Washington County Court of Common Pleas. The trial court denied appellant's subsequent Motion for Acquittal.
Appellant argues that the jury's verdict was against the manifest weight of the evidence. Appellant also argues that the trial court abused its discretion by admitting certain evidence at trial.
We find appellant's arguments to be without merit and AFFIRM the judgment of the trial court.
STATEMENT OF THE CASE AND FACTS
The following facts are pertinent to this appeal.
On May 25, 1999, Russell Life, his son Jeremy Life, and two of their employees, Randall Powell and Thomas Boyles, were engaged in moving a mobile home from West Virginia to Edgell-Jackson Trucking in Washington County, Ohio. This required two escort vehicles in addition to the tractor pulling the mobile home.
While travelling north on Ohio State Route 7, a short distance from their destination, located on Warren Township Road 7, wind conditions created a possibly dangerous condition requiring that both escort vehicles take a side-by-side position behind the tractor and trailer, thereby making it impossible for any traffic behind them to pass. In addition, all northbound traffic was forced to stop and wait while the tractor and trailer turned left onto Warren Township Road 7 and ultimately into the trucking parking lot.
After all three of the moving vehicles, the mobile home, and the vehicle of appellant were safely on this parking lot, the occupants exited their respective vehicles. Appellant there commenced to take down the license numbers of the three transport vehicles.
The initial confrontation, while only verbal, apparently took place between appellant and Thomas Boyles, who disagreed with appellant when he indicated that the transport vehicles had illegally blocked both northbound lanes of travel. Appellant was most distressed that he was unable to pass, since both lanes were blocked and that he had been forced to follow this slow-moving threesome from Belpre to Warren Township Road 7. Whatever the content of this conversation, nothing more than mere words, of whatever temperature, were exchanged between appellant and Boyles.
It was at this point that the decedent, Russell Life, and appellant confronted one another, immediately after Thomas Boyles departed the scene, leaving appellant and decedent alone. There is a small mountain of testimony in the record, much of it conflicting, as to what transpired next and who actually did and/or said what to whom, up to the point that appellant struck decedent with his closed fist on or about decedent's left jaw area.
This single blow by appellant knocked Russell Life, a sixty-nine year old man, to the ground where his head hit the concrete parking lot. Russell Life thereby was rendered unconscious, suffered a subdural hematoma and died ten days later in the Camden-Clark Hospital without regaining consciousness.
On August 13, 1999, appellant was indicted by a Washington County Grand Jury for two counts of involuntary manslaughter for the death of Russell R. Life, in violation of R.C. 2903.04, felonies of the third degree. Appellant entered pleas of not guilty to both these charges on August 19, 1999.
A jury trial was held on these charges on September 29 and September 30, 1999, in the Washington County Court of Common Pleas. Count II of the indictment was dismissed by the trial court upon a motion by the appellant pursuant to Crim.R. 29 at the conclusion of the state's case. The jury returned a guilty verdict against appellant on the remaining charge of involuntary manslaughter.
A pre-sentence investigation and report was ordered by the court. Thereafter, on November 1, 1999, a sentencing hearing on this matter was held in the trial court. As a preliminary matter, the trial court denied appellant's motion for acquittal filed on October 12, 1999, after the jury's guilty verdict. The trial court then reviewed the facts of the case and inquired individually of counsel, interested persons and appellant whether any of them desired to address the court prior to sentencing. Whereupon the decedent's son, Jeremy Life, appellant and appellant's counsel all made statements to the court. By its November 2, 1999 Sentencing Entry, the trial court sentenced appellant to a term of two years imprisonment in the Orient Correctional Reception Center, as well as ordering appellant to make restitution to decedent's family in the amount of $11,877.16.
Appellant filed a timely notice of appeal and presents two assignments of error for our review.
ASSIGNMENT OF ERROR NO. I:
THE TRIAL COURT ERRED WHEN IT ACCEPTED THE JURY'S VERDICT.
ASSIGNMENT OF ERROR NO. II:
 THE TRIAL COURT ERRED WHEN IT ADMITTED A TOOTH WHICH WAS NOT RELEVANT TO THE INSTANT OFFENSE.
 I.
In his First Assignment of Error appellant argues that there is substantial disparity and conflict in the testimony of the state's own witnesses as to what actually transpired between appellant and the decedent immediately prior to appellant striking decedent in the head or jaw. This single blow by appellant with his closed fist to the decedent's head or jaw knocked decedent to the concrete covered ground. Decedent's head struck the concrete when he went down, causing severe injury to his head, which ultimately resulted in his death some ten days later.
Appellant would have us believe that there exists an eight-part, black-letter-law standard which must be applied to the weight of the evidence and the degree of proof that must be met by the state at trial in order to obviate our finding error and reversing the jury verdict below. This purported "test" is set forth by the Supreme Court of Ohio inState v. Urbaytis (1951), 156 Ohio St. 271, 102 N.E.2d 248, and is alleged by appellant to be binding upon us in the case sub judice.
In Urbaytis, a guardian was found guilty of embezzlement by the judge after trial to the bench in the face of testimony of both the ward and her mother that the funds allegedly embezzled had actually been received by them. The Supreme Court of Ohio reversed the conviction in that case, enunciating the eight-part "test" appellant would have us apply in the case sub judice.
However creatively he may choose to phrase it, appellant's contention here is that the guilty verdict of the jury is against the manifest weight of the evidence and should have been found to be so by the judge of the trial court.
This very tactic and approach has already been soundly rejected by the Supreme Court of Ohio in State v. Cliff (1969), 19 Ohio St.2d 31,249 N.E.2d 823. This was a case of armed robbery and murder, wherein Cliff participated in the robbery of a place of business, had taken the money from the owner, ordered the owner and a clerk into a walk-in cooler at which point his pistol discharged, killing the owner. A jury found Cliff guilty on both counts with no recommendation of mercy, ultimately resulting in a death sentence. The Cliff Court made its position clear, when presented with the purported test or standard of Urbaytis.
The Urbaytis case is not in any way relevant to the facts of this case. In Urbaytis, all the evidence against the defendant was circumstantial, and the only direct testimony in the case exculpated the defendant. Furthermore, defendant had waived a jury trial and was tried to the court.
This unanimous opinion in Cliff went on to point out that the Urbaytis
court had explained when this eight-part test was not appropriate. "Of course, neither in this case nor in any other criminal case should a reviewing court substitute its judgment for that of the trier of the facts on questions of fact, * * *" Cliff, 19 Ohio St.2d at 33,249 N.E.2d at 825.
Whereupon, the Cliff court stated an additional hurdle, at 278. "We would only add that this court would be even more hesitant to substitute its judgment where the trier of facts is a jury." Id. at 33,249 N.E.2d at 825. A more succinct rejection of the application of Urbaytis is difficult to imagine.
A reviewing court in a criminal case essentially assumes the role of a "thirteenth juror" when considering a challenge based on the manifest weight of the evidence and "disagrees with fact finder's resolution of conflicting testimony." State v. Thompkins (1997), 78 Ohio St.3d 380,387, 678 N.E.2d 541, 546-47. Should the reviewing court determine that the evidence produced at trial failed to attain that high degree of certainty and probative value required for a criminal conviction. SeeState v. Getsy (1998), 84 Ohio St.3d 180, 702 N.E.2d 866. Further, such a review requires this Court to examine and consider the entire record, weigh the evidence including all reasonable inferences, as well as credibility of the witnesses.
When conducting this review, the Court is bound by the long recognized principle that witness credibility and appropriate weight of evidence are issues generally left for the trier of fact to resolve. See State v.DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, syllabus; State v.Thomas (1982), 70 Ohio St.2d 79, 434 N.E.2d 1356. No reversal of a criminal conviction is appropriate by a reviewing court if substantial evidence upon which the trier of fact could reasonably conclude that all essential elements of the offense was presented by the state and had been established beyond a reasonable doubt. See State v. Eley (1978),56 Ohio St.2d 169, 383 N.E.2d 132, syllabus. However, a criminal conviction may be reversed should the reviewing court determine that the finder of fact, in resolving evidentiary conflicts "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Thompkins,78 Ohio St.3d at 387, 678 N.E.2d at 547.
In the case sub judice, it is undenied that appellant struck the decedent in the face with his closed right fist, knocking him to the ground and onto the offending concrete where decedent struck his head, resulting in his death some ten days later. The involuntary manslaughter charge, a violation of R.C. 2903.04(B), is based on appellant's alleged assault on decedent, a violation of R.C. 2903.13(A), resulting in the death of Russell Life.
Appellant argues that he acted in self defense, in that either he was not the aggressor in the underlying altercation, or that he reasonably believed himself in immediate danger of bodily injury and that his only course of action for self-protection was the use of force to repel his assailant, which force was not excessive under the circumstances, nor that it was likely to cause great bodily harm or death to this assailant. See R.C. 2901.05(A); see, also, State v. Martin (1986),21 Ohio St.3d 91, 488 N.E.2d 166; State v. Robbins (1979),58 Ohio St.2d 74, 388 N.E.2d 755.
The testimony regarding who contributed to the creation of the situation resulting in this altercation is conflicting at best. The jury, which enjoys a far superior position to weigh and evaluate the testimony of the witnesses, chose not to embrace appellant's position on this issue. Nor did they find that appellant's actions constituted a reasonable use of force to defend himself while in fear of substantial injury to himself at the hands of Russell Life.
We are unable to say that the finder of fact, here the jury, lost its way and created such a manifest miscarriage of justice that reversal of this conviction is required. We shall not substitute our judgment for that of the jury.
Appellant's First Assignment of Error is without merit and is OVERRULED.
 II.
In his Second Assignment of Error appellant argues that admitting a tooth found in the vicinity of this incident into evidence over objection is erroneous due to a lack of linkage between the tooth, the alleged assault and the involuntary manslaughter charge he was on trial for in the court below. Apparently, it is only the admission of physical evidence itself, and not the testimony of either of the lay witnesses, Jeremy Life and June Edgell, relating to the tooth that is assigned as error.
The standard of review in matters involving a trial court's alleged error in evidentiary rulings such as this is one of an abuse of discretion. The trial court is vested with and granted broad discretion in ruling on evidentiary matters involving the admission or exclusion of evidence based on whether or not it is relevant. Such rulings by the trial court are not to be overturned absent an abuse of discretion. SeeRenfro v. Black (1990), 52 Ohio St.3d 27, 556 N.E.2d 150. The abuse of discretion standard is a hurdle that is very difficult to clear because mere disagreement with the trial court's position is insufficient, and it connotes more than an error of law or judgment. It implies that the court's attitude is unreasonable, arbitrary or unconscionable. SeeBlakemore v. Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.
Even though no medical or scientific evidence linking the tooth to decedent was produced by the state, there is no requirement that expert testimony be produced to accomplish this. See Evid.R. 701; State v.Mulkey (1994), 98 Ohio App.3d 773, 649 N.E.2d 897, jurisdictional motion overruled 71 Ohio St.3d 1500, 646 N.E.2d 1125. The lay testimony of June Edgell, who recovered the tooth, and that of the son, Jeremy Life, who stated that he removed some teeth from the mouth of his father at the scene, could provide the required sufficient foundation for admission into evidence. See Evid.R. 901 and 602. Both these foundation witnesses were subject to cross-examination to challenge their credibility and believability on this issue. See Evid.R. 607. The admissibility of this testimony, which served to provide sufficient foundation for the admission of the tooth itself into evidence, apparently went unchallenged at trial.
Appellant argues that this tooth being admitted into evidence somehow unduly influenced the jury, provided an improper emotional basis for the jury's verdict, or was itself too gruesome to be properly admitted in evidence. As to this final basis, we do find it hard to believe that a human tooth, even a decayed one, could possibly be so gruesome as to unduly influence a jury in their deliberations in this case. See Evid.R. 403; State v. Allen (1995), 73 Ohio St.3d 626, 653 N.E.2d 675, reconsideration denied 74 Ohio St.3d 1422, 655 N.E.2d 742. This is especially so given the amount of testimony presented in this case regarding the other matters requiring the attention of the jury for adjudication by them.
We find no abuse of discretion by the trial court in admitting this tooth into evidence and overrule this assignment of error.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that appellee recover of appellant costs herein taxed.
The Court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the WASHINGTON COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEENPREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, IT IS TEMPORARILYCONTINUED FOR A PERIOD NOT TO EXCEED SIXTY (60) DAYS UPON THE BAILPREVIOUSLY POSTED. The purpose of the continued stay is to allow appellant to file with the Supreme Court of Ohio an application for stay during the pendency of proceedings in that court.
If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of appellant to file a notice of appeal with the Supreme Court of Ohio within the forty-five (45) day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of the sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
David T. Evans, Judge.
Abele, P.J., and Kline, J. Concur in Judgment Only.